Commonwealth *v.* Wiggins, Appellant.

Argued November 13, 1967. Before Ervin, P. J., Watkins, Montgomery, Jacobs, Hoffman, and Spaulding, JJ. (Wright, J., absent).

466

*Robert D. Repasky*, for appellant.

*Edwin J. Martin*, Assistant District Attorney, with him *Charles B. Watkins*, Assistant District Attorney, and *Robert W. Duggan*, District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., December 28, 1967:

Defendant, Ralph Wiggins, was tried on five charges of burglary. He pleaded guilty to two bills and was adjudged guilty on the remaining three. The lower court deferred sentencing pending a mental examination for defendant. On March 4, 1959, pursuant to the report on defendant's mental status, defendant was committed to the Pennsylvania School for Defective Delinquents on Bill No. 49, February Sessions, 1959. The judge noted on that Bill: "And now, Mar. 4, 1959, sentence suspended on payment of costs by county by reason of commitment of Deft. Ralph Wiggins to the Penna. School for Defective Delinquents at Misc. No. 29 Feb., 1959."

Defendant petitioned for post-conviction relief, and a hearing was held on October 14, 1966. On February 28, 1967, the petition was granted and the commitment to the Pennsylvania School for Defective Delinquents, on Bill No. 49, was held illegal on the ground that defendant was denied the right to examine the doctors who had examined him.

On March 13, 1967, defendant was resentenced, with counsel, on Bill No. 49, to a term of not less than

eight years and two months and not more than sixteen years and four months. Defendant was committed to the State Correctional Institution at Dallas to serve this sentence.

Defendant contends that sentence was indefinitely suspended on Bill No. 49, and, therefore, no sentence can be legally imposed after the term of court has expired. The reliance placed upon *Commonwealth v. Duff*, 414 Pa. 471, 200 A. 2d 773 (1964), however, is unwarranted.

The *Duff* case condemned the practice of suspending sentences indefinitely and later vacating them for the purpose of imposing a prison term. See *Commonwealth ex rel. Perrotta v. Myers*, 203 Pa. Superior Ct. 287, 201 A. 2d 292 (1964); *Commonwealth ex rel. Lepera v. Rundle*, 205 Pa. Superior Ct. 251, 208 A. 2d 874 (1965); *Commonwealth v. Hoffman*, 210 Pa. Superior Ct. 48, 232 A. 2d 19 (1967). As our Court stated in *Commonwealth v. Hoffman*, supra, "In each of [these] cases, simply stated, there were companion Bills A and B. An initial suspension of sentence on Bill A was later vacated and prison sentence imposed following a correction of the sentence on Bill B. We held that the correction of the sentence on Bill B was proper, but that the sentence belatedly imposed on Bill A was invalid."

The original commitment in the instant case, however, must not be construed as a suspended sentence, but rather as the actual imposition of a prison term. This is true despite the use of the words "suspended sentence" found on Bill No. 49.

The Act of May 25, 1937, P. L. 808, §3, as amended, 61 P.S. §541-3, under which the defendant was initially committed, provides in part that: "In case sentence has not been imposed, the court shall have power to commit such person to the Pennsylvania Institution for Defective Delinquents in lieu of sentence to a prison

workhouse, . . . and direct the detaining of such defendant in such institution until further order of the court."

This section empowers the trial court, in its discretion, to determine the proper place of incarceration for a defendant. Consequently, the commitment to the school instead of to a prison workhouse in no way suspended this defendant's sentence. Rather, the denomination of the institution for incarceration was merely the disposition of sentence under the Bill. Therefore, since the original commitment thereunder has been found illegal, it was perfectly proper for the court to correct its error at a term of court ". . . after the term in which the original sentence was imposed." *Commonwealth ex rel. Firmstone v. Myers,* 207 Pa. Superior Ct. 453, 217 A. 2d 851 (1966).

The trial court erred, however, in committing defendant to Dallas without following the procedures enunciated in the Act of May 25, 1937, P. L. 808, §3, as amended, 61 P.S. §541-3. The Act specifically provides that the court ". . . shall order an inquiry by a psychiatrist and a psychologist or by two qualified physicians as now provided by law, who shall immediately examine the said person and make written report of its findings to the court. If, in the opinion of the psychiatrist and psychologist or the physicians, the person so committed or convicted or held is mentally defective and has criminal tendencies, whether or not coupled with mental instability, he or they shall so state in the report of their examination to the court. The court may, in its discretion, summon other witnesses and secure further evidence. If the court is then satisfied that the person thought to be mentally defective is not insane, nor can be classified as an idiot or imbecile by recognized psychological tests nor a psychopath or an infirmary case, though in fact mentally defective with criminal tendencies, the court shall order

the commitment or transfer of such person to the Pennsylvania Institution for Defective Delinquents." Without such findings, the defendant cannot be sent to the State Correctional Institution at Dallas. Since the Court failed to follow the procedures prescribed by statute, a new hearing on sentencing must be held.

The record is remanded for a hearing in accordance with this opinion.